**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **FRANK BARTELL, ET AL.,** | : | **CIVIL ACTION** |
| | : | |
| *Plaintiffs,* | : | |
| | : | |
| v. | : | **No. 2:19-cv-6056** |
| | : | |
| **COMMUNITY COLLEGE OF PHILADELPHIA, ET AL.,** | : | |
| | : | |
| *Defendants.* | : | |
| | : | |
| **CAROL STEIN, ET AL.,** | : | **CIVIL ACTION** |
| | : | |
| *Plaintiffs,* | : | |
| | : | |
| v. | : | **No. 2:19-cv-6057** |
| | : | |
| **COMMUNITY COLLEGE OF PHILADELPHIA, ET AL.,** | : | |
| | : | |
| *Defendants.* | : | |
| | : | |
| **MARGARET STEPHENS, ET AL.,** | : | **CIVIL ACTION** |
| | : | |
| *Plaintiffs,* | : | |
| | : | |
| v. | : | **No. 2:20-cv-1659** |
| | : | |
| **COMMUNITY COLLEGE OF PHILADELPHIA, ET AL.,** | : | |
| | : | |
| *Defendants.* | : | |

| | | |
|---|---|---|
| **THOMAS J. QUINN,** | : | |
| | : | **CIVIL ACTION** |
| | : | |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | **No. 2:20-cv-1666** |
| | : | |
| **COMMUNITY COLLEGE OF** | : | |
| **PHILADELPHIA, <u>ET AL.</u>,** | : | |
| | : | |
| *Defendants.* | : | |
| | : | |

**Goldberg, J.**                                                    **February 24, 2022**

<u>**MEMORANDUM OPINION**</u>

Plaintiffs, former faculty members of the Community College of Philadelphia (the "College"), filed these age discrimination actions after the College eliminated their positions through a pre-retirement workload plan. Plaintiffs have sued the College, its president Dr. Donald Guy Generals, and ten John and Jane Does pursuant to the Age Discrimination in Employment Act ("ADEA"), Older Workers Benefit Protection Act ("OWBPA"), Pennsylvania Human Relations Act ("PHRA"), and the Americans with Disabilities Act ("ADA"). I granted in part and denied in part Defendants' first motions to dismiss the original Complaints and provided Plaintiffs with leave to amend several of their claims.[1] Defendants now seek dismissal of all but one of the claims in Plaintiffs' Amended Complaints. For the following reasons, I will grant in part and deny in part Defendants' Motions.[2]

---

[1]      See <u>Bartell et al. v. Community College of Philadelphia et al.</u>, No. 2:19-cv-06056 (ECF Nos. 20-21).

[2]      On May 20, 2020, I consolidated the above-captioned cases for purposes of discovery only. (Dkt. 19-5056, ECF No. 8). Because the issues forecasted in Defendants' first motions to dismiss substantially overlapped, the parties filed consolidated Rule 12(b)(6) briefs. The parties have done so again and have acknowledged that the factual allegations are nearly identical across all four Amended Complaints. Therefore, for the sake of consistency, I shall reference the factual allegations from the <u>Bartell</u> action. (Dkt. 19-5056, ECF No. 23).

## I.   FACTUAL AND PROCEDURAL BACKGROUND[3]

As I explained in my opinion on Defendants' first motions to dismiss, each of the named Plaintiffs are over the age of forty and were previously employed as full-time faculty members at the College.  The College offered a benefit known as the Pre-Retirement Workload Option ("the Program"), which allowed faculty members over the age of fifty-five to elect to decrease their workload and salary by half while still receiving full-time benefits.  Once an employee elected to assume a position within the Program, the employee was permitted to maintain a reduced workload schedule with full benefits for the duration of their employment.  Between 2015 and 2019, each of the Plaintiffs qualified for the Program and elected to assume a position under the conditions set forth above.  In 2019, the College eliminated the Program, forcing Plaintiffs to either retire or take a new position with double their existing workload.  Some Plaintiffs elected to assume a role with double their existing workload, and others retired.  No College employee under the age of forty was forced to retire or increase their workload.  (See Bartell Am. Compl.)

In their first Complaints, Plaintiffs brought claims for disparate treatment in violation of the ADEA (Count 1); disparate impact in violation of the ADEA (Count 2); declaratory relief for a violation of the OWBPA (Count 3); a violation of the PHRA (Count 4); and a violation of the ADA on behalf of Plaintiff Bartell only (Count 5).  Defendants filed motions to dismiss the Complaints in their entirety.  On April 21, 2021, I granted Defendants' motions with prejudice with respect to the OWBPA declaratory relief claim and the PHRA claim only as it related to Dr. Generals in his individual capacity.  I granted the motions without prejudice with respect to the disparate treatment and disability claims and provided Plaintiffs with leave to amend their

---

[3]     The following facts are taken from the Complaints and will be viewed in the light most favorable to Plaintiffs.  Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

Complaints.  I also denied the motions with respect to the disparate impact claim against the College.

Presently pending before me are Defendants' Motions to Dismiss Plaintiffs' Amended Complaints.

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  The United States Supreme Court has recognized that "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and only a complaint that states a plausible claim for relief survives a motion to dismiss.  Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 678.  A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.  Id. at 679.

The United States Court of Appeals for the Third Circuit has detailed a three-step process to determine whether a complaint meets the pleadings standard.  Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014).  First, the court outlines the elements a plaintiff must plead to state a claim for relief.  Id. at 365.  Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth."  Id.  Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they

plausibly give rise to an entitlement to relief.'" <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 679).  The last step is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 679).  Under this liberal pleading standard, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint, unless amendment would be futile.  <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002).

## III.    DISCUSSION

Defendants seek dismissal of all but one of Plaintiffs' claims,[4] contending that Plaintiffs' Amended Complaints fail to allege sufficient factual support that the College eliminated the Program based on age-based and disability-based animus.[5]  Defendants also argue that the PHRA aiding and abetting claim against the Doe Defendants is meritless and should be dismissed. Plaintiffs respond that they have provided sufficient factual support for their claims.

### A.    Age Discrimination in Employment Act – Disparate Treatment (Count I)

#### 1.    <u>Legal Standard</u>

Plaintiffs bring claims against all Defendants for disparate treatment in violation of the ADEA.  To establish a *prima facie* case of age discrimination based on disparate treatment, a plaintiff must demonstrate that "(1) [he] is forty years of age or older; (2) the defendant took an adverse employment action against him; (3) [he] was qualified for the position in question; and (4) [he] was ultimately replaced by another employee who was sufficiently younger to support an

---

[4]     Defendants state in the introduction section of their brief that they move to dismiss Plaintiffs' Amended Complaints in their entirety, but they do not provide argument regarding Plaintiffs' disparate impact claim.  Nonetheless, I have already denied Defendants' motion to dismiss the disparate impact claim.

[5]     Defendants continue to maintain, as they did in their first motions to dismiss, that the College's decision to eliminate the Program was the product of an agreement between the College and the Faculty & Staff Federation of the Community College of Philadelphia, Local 2026, AFT, AFL-CIO (the "Federation"), which represents the College's faculty.  Because this argument goes beyond the Amended Complaints' allegations, it is more appropriately raised after the pleading stage.

inference of discriminatory animus." Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013). When a plaintiff is not replaced, he or she can, nonetheless, satisfy this fourth element by either: "(1) introduc[ing] evidence of comparators (i.e., similarly situated employees who (a) were not members of the same protected class and (b) were treated more favorably under similar circumstances); or (2) rely[ing] on circumstantial evidence that otherwise shows a causal nexus between his membership in a protected class and the adverse employment action." Ellis v. Bank of New York Mellon Corp., No. 18-cv-1549, 2020 WL 2557902, at *10 (W.D. Pa. May 20, 2020).

"[O]n a motion to dismiss, there is no need for plaintiff to establish a *prima facie* case of age discrimination, or to tailor his pleadings to the specific elements typically required of an employment discrimination plaintiff to survive a motion for summary judgment." Satterfield v. Consol Pa. Coal Co., No. 06-cv-1262, 2007 WL 2728541, at *4 (W.D. Pa. Sept. 17, 2007) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508–15 (2002)) (observing that "the court's inquiry [when reviewing a motion to dismiss] is limited to the question of whether plaintiff's allegations relating to an alleged violation of the ADEA set forth a claim upon which relief may be granted"); Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 564 (3d Cir. 2002) ("[A] complaint need . . . "not [provide] a detailed recitation of the proof that will in the end establish such a right.").

2.    Plaintiffs' Factual Allegations in the Amended Complaints

In support of their disparate treatment claim, Plaintiffs alleged in their original Complaints that Defendants eliminated the positions within the Program to intentionally remove older employees based on the College's negative stereotypes and assumptions about older workers. Plaintiffs further contended that the College believed the makeup of the faculty was too old.  I found these allegations to be too speculative to survive a motion to dismiss, and thus I dismissed the claim and provided Plaintiffs with leave to amend their Complaints.

In their Amended Complaints, Plaintiffs additionally allege that "[a]s far back as 2008, statements made by the administration and staff at the College revealed that Defendants believed that the makeup of the faculty was too old, and the College intentionally endeavored to have a younger faculty." (Bartell Am. Compl., ¶ 63.)  Plaintiffs provide several examples of statements allegedly made by multiple different administrators at the College:

- [D]uring a presentation by Karen Schermerhorn about wellness plans to reduce healthcare costs for the College, Stephen Curtis, then the President of the College interjected that the College actually "needed" to get older faculty to begin to retire earlier. . . another faculty member laughed uncomfortably and said, "you should not say things like that."

- [D]uring a May 2019 meeting with Michael Stern and Margaret Stephens about the decision to eliminate reduced workload positions for older faculty, current President Donald Generals stated that older faculty were "just hanging on and should retire."

- [At some unspecified time,] the President[] [made a] statement that the college would offer benefits to "those seeking to retire at a more normal retirement age of 66" impl[ying] that an older retirement age is abnormal, undesirable, and deviant.

- In 2010, Ellen Fernberger, of Human Resources, later the Vice President of Human Resources at the College, in an Executive Committee meeting for which Frank Bartell was present, stated that her mission was to make the faculty more representative of the City's demographics, and her problem was that older faculty members' decisions not to retire "interfered" with her mission.

(Bartell Am. Compl., ¶¶ 64–65, 67, 69, 70.)

Plaintiffs also cited several examples of negative comments made by younger co-workers about the older faculty members, alleging "[t]he College tolerated employees who voiced negative stereotypes about older faculty members.  In doing so, [Plaintiffs claim that] the College encouraged and fostered an environment that was hostile to older faculty members." (Id. at ¶ 72.) These negative stereotypes perpetuated by co-workers included:

- Younger faculty members regularly referred to older faculty members as "dead wood."  For example, Stan Gilbert witnessed one of the younger members of the faculty enter a staff meeting with a desiccated wood log in her arms and announce

the log as a "gift" to the older faculty, implying that the older faculty was "dead wood."

- Younger faculty members disparagingly referred to older faculty members as "the farts."

- In 2017, faculty member Marc Meola showed support for the view that all baby boomers were sociopaths by reposting on facebook an article making the claim that all baby boomers were sociopaths.

- In 2017, Carol Stein witnessed faculty member Junior Brainard, dismissively refer to older faculty members in the union's Executive Committee as "old people with nothing better to do on Tuesday afternoons but go to Executive Committee Meetings."

- In 2019, faculty member Keisha Watson wrote on a listserv that "people on half-time are regarded as boomers hoarding benefits."

(Bartell Am. Compl., ¶¶ 73–77.)

3.   Analysis

Defendants primarily argue that Plaintiffs have failed to sufficiently plead the fourth element—that but for Plaintiffs' ages, the College would not have decided to eliminate the Program.  Defendants contend that the factual allegations detailed above are inadequate to state a plausible claim for relief.  Defendants point out that, in Plaintiffs' original Complaints, they failed to allege facts demonstrating that the College discriminated against them because of their age, and that their allegations were found to be conclusory and speculative.  Defendants maintain that the facts Plaintiffs added to their Amended Complaints are still insufficient to survive a motion to dismiss because: (1) Plaintiffs' assertions about the College eliminating the Program based on "negative stereotypes about older workers" are conclusions, not factual allegations, (2) Plaintiffs do not identify any similarly situated comparators who were treated more favorably, and (3) the "stray remarks" cited by Plaintiffs to demonstrate a causal nexus between their age and the adverse

8

employment action were made by non-decision makers and were unrelated to the decision to terminate the Program.

I find that Plaintiffs have cured the deficiencies in their original Complaints such that their allegations are now sufficient to survive a motion to dismiss the disparate treatment claim. Plaintiffs' examples of discriminatory comments made by administrators about older faculty members constitute enough circumstantial evidence showing a causal nexus between their age and the College's decision to terminate the Program.  Plaintiffs have cited several comments made by multiple administrators at the College that generally indicated the administration was actively trying to get faculty to retire earlier.  Plaintiffs also set out several discriminatory comments made by younger co-workers regarding age and allege that younger co-workers felt they could express these sentiments because the College "encouraged and fostered" a work environment that was hostile towards older employees.  Certainly, comments suggesting that older faculty members "were just hanging on" and that the College "needed" them to retire could raise an inference that Plaintiffs' ages were causally connected to the College's choice to terminate the Program.  I find that Plaintiffs' conclusions regarding why the College eliminated the Program rise above the speculative level with the additional factual allegations provided in the Amended Complaints.

Defendants correctly point out that Plaintiffs have not properly identified similarly-situated comparators who were treated more favorably.  However, there is more than one way to meet the fourth element of the Burton test, and Plaintiffs have done so by providing circumstantial evidence demonstrating a causal nexus between their age and termination of the Program.  So, while Plaintiffs' comparator evidence is insufficient for the same reasons already outlined in my April 2021 opinion, that does not foreclose their claim.

Defendants also rely on three cases from within the Third Circuit, <u>Cridland</u>. <u>Hodczak</u>, and <u>Ezold</u> to argue that the comments cited in the Amended Complaints are nothing more than "stray remarks" insufficient to support a disparate treatment claim.  This is not persuasive because these cited cases were at more advanced stages of litigation in which the plaintiffs were held to a more stringent standard.  <u>See</u> <u>Cridland v. Kmart Corp</u>, 929 F. Supp. 2d 377, 389 (E.D. Pa. 2013) (opinion on motion for summary judgment); <u>Hodczak v. Latrobe Specialty Steel Co.</u>, 451 Fed. Appx.  238, 241 (3d Cir. 2011) (appeal from grant of summary judgment); <u>Ezold v. Wolf, Block, Schorr and Solis–Cohen</u>, 983 F. 2d 509, 545 (3d Cir. 1992) (appeal from judgment following bench trial). Whether the alleged comments were made by the correct people and at the right times are questions more appropriately answered through discovery and on a motion for summary judgment. <u>McKenith v. Borough of Wilkinsburg</u>, No. 20-cv-1361, 2021 WL 3913973, at *3 (W.D. Pa. Sept. 1, 2021) ("[a] prima facie case is an evidentiary standard, not a pleading requirement, and hence is not a proper measure of whether a complaint fails to state a claim.").  At this time, Plaintiffs have pled enough facts such that I am able to draw a reasonable inference that the College may be liable for age discrimination under a disparate treatment theory.  <u>Tilton v. GlaxoSmithKline, LLC</u>, No. 14-cv-1267, 2014 WL 4105989, at *4 (E.D. Pa. Aug. 21, 2014) (denying motion to dismiss where plaintiff cited several negative age-related comments made by her supervisor and finding that the allegations "raise[d] a reasonable expectation that discovery w[ould] reveal direct evidence of discrimination.").

Defendants lastly contend that Plaintiffs' positions were not "eliminated" as they have alleged, but instead, the Program was eliminated.  I construe this as a challenge to the existence of an adverse employment action under the second <u>Burton</u> factor.  Courts have addressed this issue in the context of early retirement incentive offers.  Offering an early retirement incentive violates

the ADEA when "the alternative [to choosing retirement] is constructive discharge—that is, working conditions so onerous or demeaning that the employee has effectively been fired and compelled to leave." Henn v. Nat'l Geographic Soc., 819 F.2d 824, 826 (7th Cir. 1987); see also Goss v. Exxon Off. Sys. Co., 747 F.2d 885, 888 (3d Cir. 1984).  On the other hand, there is no violation of the ADEA when an early retirement incentive is offered and the decision to reject that offer does not put the employee at any disadvantage.  Henn, 819 F.2d at 826.  Courts have explained, "when one option makes the recipient better off, and the other is the status quo, then the offer is beneficial. . . [and does not] produce an involuntary response."  Id.  It follows that the same logic courts apply to the offering of an early retirement incentive would apply to the elimination of an early retirement incentive.  That is, if the elimination of the early retirement incentive results in a forced choice between retirement and "working conditions so onerous" they amount to constructive discharge, there may be a violation of the ADEA.  However, if the choice is between a benefit or simply remaining in one's current position, there is no violation of the ADEA.

Here, the early retirement incentive was the Pre-Retirement Workload Program under which the Plaintiffs were able to maintain a reduced workload schedule while still receiving full benefits.  When the College eliminated the Program, Plaintiffs who had already elected to participate in the Program were faced with two options: (1) retire; or (2) take a new position with double the workload.  In their Amended Complaints, Plaintiffs characterize this choice as an option between "constructively forced retirement" or an increased workload.  (Bartell Am. Compl., ¶¶ 30, 32.)  Keeping in mind that I must construe all facts in the light most favorable to Plaintiffs, I find that being forced to take on double one's existing workload could amount to constructive discharge.  Goss, 747 F.2d at 888–89 (finding constructive discharge when sales representative's

job responsibilities were significantly altered).   Accordingly, I conclude that Plaintiffs have adequately pled that they suffered an adverse employment action under the ADEA.

Therefore, Defendants' Motions to Dismiss the disparate treatment claims in Counts One and Three of Plaintiffs' Amended Complaints will be denied.

**B.   Americans with Disabilities Act Claim on Behalf of Plaintiff Bartell (Count IV)**

Plaintiff Frank Bartell asserts claims against the College for disability discrimination and failure to accommodate in violation of the ADA.   To establish a *prima facie* case of disability discrimination, a plaintiff must demonstrate that "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination."   <u>Gaul v. Lucent Techs., Inc.</u>, 134 F.3d 576, 580 (3d Cir. 1998).

Bartell alleged in his original Complaint that he is disabled within the meaning of the ADA and that he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodations.  (<u>Bartell</u> Compl., ¶¶ 48–49, 89–90.)  He also pled that he suffered an adverse employment decision—that his position within the Program was eliminated and, as a result, he was forced to retire.  (<u>Id.</u> at ¶¶ 33, 52.)  However, I found that the Complaint was devoid of factual allegations to establish that this adverse employment action was due to his disability.

In his Amended Complaint, Bartell alleges that in 2015, he submitted an online "notice of disability" form at the request of Human Resources.  (<u>Bartell</u> Am. Compl., ¶ 49.)  Bartell alleges that through that online notice, "as well as through conversation and casual comments it was clear that [the College] knew and understood that a reduced class schedule would provide a sufficient accommodation for [Bartell's] condition."  (<u>Id.</u> at ¶ 51.)  He further alleged that after the College

terminated the Program, the College "refus[ed] to engage in an interactive process to consider or even suggest an alternative accommodation."  (Id. at ¶ 108.)  Finally, Bartell alleged that the decision to terminate the Program was because of the College's "long held animus toward such accommodations."  (Id. at ¶ 54.)  To support this allegation, Bartell alleged that the College's former President Stephen Curtis once stated that a proposed faculty health and wellness plan "interfered" with his goal of getting faculty to retire earlier.  (Id.)

Defendants argue that Bartell has failed to allege any facts showing that the College took any adverse action against him based on his disability.  Defendants assert that the alleged comment made by former President Curtis was made at least six years before the elimination of the Program and had nothing to do with Bartell's disability.  Accordingly, Defendants conclude that this comment is nothing more than a stray remark, and Bartell's disability claim must fail.  Bartell responds that the "newly pled facts allege that the adverse employment action was a result of his disability." (Pl. Br. at p. 9, ECF No. 25).

Viewing the Amended Complaint in the light most favorable to Bartell, his allegations still lack factual support to establish that the College's decision to terminate the Program had anything to do with his disability.  The single remark by President Curtis is not only an isolated comment that is temporally removed from the College's decision to eliminate the Program, but it also does not mention disability in any way, let alone Bartell's disability.  It is simply too vague to support his contention that the College eliminated the Program due to discriminatory animus based on his disability.  Thus, Bartell's ADA claim will be dismissed with prejudice.

In the alternative, Bartell argues that he has sufficiently pled a failure to accommodate claim under the ADA.  To establish a *prima facie* case for failure to accommodate, a plaintiff must demonstrate that "(1) he was disabled and his employer knew it; (2) he requested an

accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." Capps v. Mondelez Global, LLC, 847 F.3d 144, 157 (3d Cir. 2017) (citations omitted).  Defendants argue that Bartell has failed to plead that he requested an accommodation, or that the College refused to engage in an interactive process with him.

I find that Bartell has also failed to sufficiently allege a failure to accommodate claim because he has not pled that he requested an accommodation for his disability in the first place.  It is clear that Bartell is attempting to connect his notice of disability to Human Resources with his election to participate in the Program.  However, a simple notice regarding one's disability sent to Human Resources cannot transform that employee's unrelated choice to participate in an early retirement program as a "request for an accommodation."  The College could not have been expected to be aware that Bartell considered his participation in the Program as an accommodation for his disability under the ADA.  For those reasons, I find that Bartell has failed to allege a failure to accommodate claim under the ADA, and the claim will be dismissed with prejudice.

### C.  Pennsylvania Human Relations Act – Aiding and Abetting Claim Against the John and Jane Doe Defendants (Count III)

Plaintiffs bring a claim against the John and Jane Doe Defendants for aiding and abetting in violation of the PHRA.[6]  In their first Motions to Dismiss, Defendants argued that the PHRA claim against Dr. Generals (former President of the College) should be dismissed because Plaintiffs had not named Dr. Generals in their charges of discrimination, and therefore, they had not exhausted their administrative remedies.  I agreed and dismissed with prejudice the claim

---

[6]     The Third Circuit has determined that "interpretation of the PHRA is identical to that of federal anti-discrimination laws, including the ADEA," and thus, the same analysis applies to each.  Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 643 (3d Cir. 2015).

14

against Dr. Generals individually.  Defendants now argue that for the same reason, the PHRA aiding and abetting claim must be dismissed against the ten John and Jane Doe Defendants. Defendants alternatively assert that this claim should be dismissed because Plaintiffs have failed to allege any facts to support their aiding and abetting claim against the John and Jane Doe Defendants.

As I explained in my April 2021 opinion, "[b]efore filing suit under the PHRA, a plaintiff must first exhaust all administrative remedies by filing a charge of discrimination (also referred to as an administrative complaint) with the . . . PHRC [] or EEOC."  Hills v. Borough of Colwyn, 978 F. Supp. 2d 469, 478 (E.D. Pa. 2013) (citing Kunwar v. Simco, 135 F. Supp. 2d 649, 653 (E.D. Pa. 2001); 43 Pa. Cons. Stat. § 962).  This administrative "complaint must name the individual(s) alleged to have violated the PHRA."  DuPont v. Slippery Rock Univ. of Pennsylvania, No. 11-cv-1435, 2012 WL 94548, at *3 (W.D. Pa. Jan. 11, 2012) (citing 43 Pa. Cons. Stat. § 959(a)).  "The purpose of requiring an aggrieved party to resort first to the [PHRA or] EEOC is twofold: to give notice to the charged party and provide an avenue for voluntary compliance without resort to litigation."  Glus v. G.C. Murphy Co., 562 F.2d 880, 888 (3d Cir. 1987) (citations omitted).

Generally, when an aggrieved party fails to name an individual defendant in his administrative complaint, he is precluded from later filing suit against that individual.  Jankowski v. Fanelli Bros. Trucking Co., No. 13-cv-2593, 2014 WL 1612600, at *5 (M.D. Pa. Apr. 22, 2014) (citing Schafer v. Bd. of Pub. Educ., 903 F.2d 243, 251 (3d Cir. 1990)).  However, the Third Circuit has articulated an exception to this rule "when the unnamed party received notice and when there is a shared commonality of interest with the named party."  Schafer, 903 F.2d at 252 (applying the exhaustion exception in the context of a Title VII claim).

In their Amended Complaints, Plaintiffs allege:

> At all times materiel (sic) hereto, Defendants John and Jane Does 1 through 10 aided and abetted Defendant Community College of Philadelphia's discrimination against Plaintiffs and used their authority and/or apparent authority as a supervisory employer to aid and abet Defendant Community College of Philadelphia in taking adverse employment action against Plaintiffs because of Plaintiffs' age and disability.

(Bartell Am. Compl., ¶ 99.)

The Doe Defendants could not have received notice of Plaintiffs' claims because they are not named or even referenced in the charges of discrimination, and accordingly Plaintiffs have failed to satisfy the Schafer exception to the notice requirement.  And with respect to Defendants' alternative argument, Plaintiffs also do not offer any factual allegations to support their contention that the Doe Defendants aided and abetted any illegal conduct, or what specific role they played in the decision to terminate the Program.  Without more, these allegations are too speculative to survive a motion to dismiss.  Greineder v. Masonic Homes of the R.W. Grand Lodge, F & AM of Pennsylvania, No. 13-cv-2376, 2014 WL 1632143, at *8 (E.D. Pa. Apr. 23, 2014) (dismissing PHRA aiding and abetting claim against unnamed defendants because plaintiffs offered no explanation of how those defendants' actions constituted aiding and abetting).  Accordingly, Defendants' Motions to Dismiss the PHRA aiding and abetting claim against the Doe Defendants will be granted.

## IV.   CONCLUSION

For the foregoing reasons, I will grant in part and deny in part Defendants' Motions to Dismiss.  An appropriate Order follows.